IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| COOK PRODUCTIONS, LLC, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     vs. | )   Civ. No. 17-00034 ACK-RLP |
| | ) |
| ALEX STEWART, et al., | ) |
| | ) |
|     Defendants. | ) |
| | ) |
| | ) |

**ORDER ADOPTING IN PART AND REJECTING IN PART THE FINDINGS AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART PLAINTIFF COOK PRODUCTIONS, LLC'S MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANT ALEX STEWART**

For the reasons set forth below, the Court adopts in part and rejects in part the Findings and Recommendation to Grant in Part and Deny in Part Plaintiff Cook Productions, LLC's Motion for Entry of Default Judgment Against Defendant Alex Stewart, ECF No. 29, issued by Magistrate Richard L. Puglisi on August 22, 2017.

**BACKGROUND**

On January 25, 2017, Plaintiff Cook Productions, LLC ("Plaintiff") filed a complaint against 15 unknown Doe defendants alleging claims for direct and contributory copyright infringement. Compl., ECF No. 1. Plaintiff is the owner of a copyrighted motion picture entitled *Mr. Church* ("Work"). Id. ¶ 10; First Am. Compl. ¶ 17, ECF No. 18. Plaintiff alleges that

each defendant used BitTorrent, a peer-to-peer file sharing protocol, to reproduce, distribute, display or perform the copyrighted Work at issue in violation of 17 U.S.C. § 106(1), (3)-(5). First Am. Compl. ¶¶ 22-65, ECF No. 18.

Plaintiff filed a First Amended Complaint on May 5, 2017 naming Alex Stewart specifically as a defendant. Id. ¶¶ 5, 9-15. Through early discovery, Plaintiff appears to have been able to identify Mr. Stewart based on the Internet Protocol address ("IP address") at which the alleged infringement was observed. Id. ¶¶ 5, 9-12. Plaintiff alleges that activity at that IP address shows that 12 titles, including the copyrighted Work at issue, were consistently downloaded and/or distributed. Id. ¶ 10. Plaintiff also alleges that the subscriber of that IP address, Lawrence Stewart, stated that his son, defendant Alex Stewart, "was likely responsible for this activity." Id. ¶ 12.

A copy of the summons was left at Mr. Stewart's residence with his father on March 28, 2017. ECF No. 22. On June 16, 2017 Plaintiff's counsel spoke with Mr. Stewart's father, who stated that he had given the documents to his son "quite a while ago." Declaration of Counsel ¶ 5, ECF No. 24-1. After Mr. Stewart failed to appear, the Clerk of Court entered default against him on June 21, 2017, pursuant to Plaintiff's request. ECF Nos. 24-25. On July 7, 2017, Plaintiff filed the instant motion for default judgment against Mr. Stewart seeking

statutory damages, injunctive relief, and attorneys' fees.
Motion at 1-2, ECF No. 26 ("Motion").  Mr. Stewart did not
oppose the Motion.

On August 22, 2017, Judge Puglisi entered Findings and
Recommendation to Grant in Part and Deny in Part Plaintiff's
Motion.  ECF No. 29 ("F&R").  After determining the Court had
subject matter jurisdiction and personal jurisdiction, Judge
Puglisi recommended that default judgment be entered in
Plaintiff's favor against Mr. Stewart.  Id. at 4-9.  However, he
recommended denying Plaintiff's requests for a permanent
injunction and for an order requiring Mr. Stewart to destroy all
illegal copies of the Work and the software used for the alleged
infringement.  Id. at 10-12, 16.  Judge Puglisi also recommended
awarding statutory damages, but only in the amount of $750,
rather than the $7,500 requested.  Id. at 12-13, 17.  Finally,
Judge Puglisi recommended denying Plaintiff's request for
attorneys' fees.  Id. at 14-17.

Plaintiff filed objections to the F&R on August 25,
2017.  ECF No. 30 ("Obj.").  Mr. Stewart did not file a response
to the objections.

### STANDARD

The district court may accept those portions of the
findings and recommendation that are not objected to if it is
satisfied that there is no clear error on the face of the

3

record.  <u>United States v. Bright</u>, Civ. No. 07-00311 ACK-KSC,
2009 WL 5064355, at *3 (D. Haw. Dec. 23, 2009); <u>Stow v.
Murashige</u>, 288 F. Supp. 2d 1122, 1127 (D. Haw. 2003).  If a
party objects to a magistrate judge's findings or
recommendation, the district court must review de novo those
portions to which the objections are made and "may accept,
reject, or modify, in whole or in part, the findings or
recommendations made by the magistrate judge."  28 U.S.C.
§ 636(b)(1)(C); <u>see also</u> <u>United States v. Reyna-Tapia</u>, 328 F.3d
1114, 1121 (9th Cir. 2003) (en banc) ("[T]he district court must
review the magistrate judge's findings and recommendations de
novo *if objection is made*, but not otherwise." (emphasis in
original)).

    Under a de novo standard, a district court "review[s]
the matter anew, the same as if it had not been heard before,
and as if no decision previously had been rendered."  <u>Freeman v.
DirecTV, Inc.</u>, 457 F.3d 1001, 1004 (9th Cir. 2006).  The
district court need not hold a de novo hearing; however, it is
the court's obligation to arrive at its own independent
conclusion about those portions of the magistrate judge's
findings or recommendation to which a party objects.  <u>United
States v. Remsing</u>, 874 F.2d 614, 618 (9th Cir. 1989).

    It is within the district court's discretion to
"receive further evidence, recall witnesses, or recommit the

4

matter to the magistrate judge with instructions." Local Rule 74.2. Pursuant to Local Rule 74.2, this Court "may consider the record developed before the magistrate judge," but the Court must make its "own determination on the basis of that record."

## DISCUSSION

The parties have not objected to Judge Puglisi's finding that Plaintiff is entitled to default judgment against Mr. Stewart or to the award of only $750 in statutory damages to Plaintiff. See generally F&R; Obj. The Court does not find clear error in the F&R regarding these findings and adopts them for the reasons stated therein.

Plaintiff objects to three findings in the F&R: (1) that Plaintiff is not entitled to a permanent injunction; (2) that the request for an order that Mr. Stewart destroy all copies of the infringing work and file-sharing software be denied; and (3) that Plaintiff's request for an award of attorneys' fees be denied. Obj. at 2. The Court agrees with Plaintiff's objections and accordingly ADOPTS IN PART and REJECTS IN PART Magistrate Judge Puglisi's Findings and Recommendation.

## I. Plaintiff Correctly Asserts That It Is Entitled to a Permanent Injunction and Order

The Copyright Act authorizes a court to "grant temporary and final injunctions on such terms as it may deem

reasonable to prevent or restrain infringement of a copyright."

17 U.S.C. § 502(a). In addition, the Act authorizes a court to

"order the destruction or other reasonable disposition" of all

copies of the copyrighted work "found to have been made or used

in violation of the copyright owner's exclusive rights," as well

as "articles by means of which such copies" may be reproduced.

Id. § 503(b).

To be entitled to a permanent injunction, a plaintiff

must demonstrate: "(1) that it has suffered an irreparable

injury; (2) that remedies available at law, such as monetary

damages, are inadequate to compensate for that injury; (3) that,

considering the balance of hardships between the plaintiff and

defendant, a remedy in equity is warranted; and (4) that the

public interest would not be disserved by a permanent

injunction." eBay Inc. v. MercExchange, LLC, 547 U.S. 388, 391

(2006). "As a general rule, a permanent injunction will be

granted when liability has been established and there is a

threat of continuing violations." MAI Sys. Corp. v. Peak

Computer, Inc., 991 F.2d 511, 520 (9th Cir. 1993). However,

irreparable harm is not presumed even where infringement has

been found. See Flexible Lifeline Sys., Inc. v. Precision Lift,

Inc., 654 F.3d 989, 996 (9th Cir. 2011); see also Hardy Life,

LLC v. Nervous Tattoo, Inc., No. CV 08-3524 PA (CTX), 2008 WL

11338698, at *3 (C.D. Cal. Aug. 4, 2008) (noting that "eBay

rejected a presumption of irreparable harm when assessing the issuance of a permanent injunction").

Courts routinely find that permanent injunctions like the one requested here are warranted in default judgment cases involving BitTorrent. See, e.g., Malibu Media, LLC v. Sianturi, No. 116CV01059AWISKO, 2017 WL 3328082, at *6 (E.D. Cal. Aug. 4, 2017); LHF Prods., Inc. v. Does 1-19, No. C16-1175RSM, 2017 WL 615197, at *3 (W.D. Wash. Feb. 15, 2017); Dallas Buyers Club, LLC v. Bui, No. C14-1926RAJ, 2016 WL 1242089, at *3 (W.D. Wash. Mar. 30, 2016); Elf-Man, LLC v. C.G. Chinque Albright, No. 13-CV-0115-TOR, 2014 WL 5543845, at *7 (E.D. Wash. Oct. 31, 2014).

As in those cases, the Court finds that the eBay factors favor a permanent injunction here. Plaintiff will likely suffer irreparable harm absent an injunction for which monetary damages would be inadequate because of the nature of BitTorrent. As Plaintiff explains, the manner in which the BitTorrent protocol operates leads to a very rapid distribution of files to many users. See Motion at 24; First Am. Compl. ¶¶ 37-43; see also Malibu Media, 2017 WL 3328082, at *6 ("The nature of the BitTorrent system means the Plaintiff's works can continue to circulate the internet at a fast rate and reach many users."). Mr. Stewart's use of BitTorrent to infringe Plaintiff's Work does not appear to be an isolated incident; rather, the IP address Mr. Stewart used is associated with 12

7

titles that are "consistently" downloaded or shared on
BitTorrent, including one that was downloaded or shared fifteen
times.  First Am. Compl. ¶ 10.

Mr. Stewart's refusal to participate in this action
does not reassure the Court that he has deleted his infringing
copies of Plaintiff's Work, stopped using BitTorrent, or will
voluntarily do either in the future.  See Hearst Holdings, Inc.
v. Kim, No. CV074642GAFJWJX, 2008 WL 11336137, at *7 (C.D. Cal.
Aug. 17, 2008) (defendants' "failure to respond in any way to
this action does not reassure the Court that [they] have stopped
infringing Plaintiffs' copyrights, which is yet another reason
why granting a permanent injunction to enjoin them from further
infringement is appropriate."); see also Virgin Records Am.,
Inc. v. Johnson, 441 F. Supp. 2d 963, 966 (N.D. Ind. 2006)
("Defendant's failure to respond to the complaint likely
suggests Defendant does not take seriously the illegality of the
infringing activity.").

In light of the foregoing, Plaintiff stands to suffer
further damage absent an injunction.  In addition, the balance
of hardships also favors Plaintiff because Mr. Stewart would
suffer no injury other than refraining from his infringing
conduct, while Plaintiff would have to trace numerous IP
addresses as distribution and infringement continues.  Finally,
preventing further copyright infringement undoubtedly serves the

public interest.

The Court does not find it unreasonable to issue an injunction against Mr. Stewart. Though courts have expressed concern where an alleged infringer has been identified by a subscriber "through unknown means and for unknown reasons," see Dallas Buyers Club v. Bui, 2016 WL 1242089, at *3, such concern does not appear great here. Mr. Stewart was identified by his father, the subscriber. First Am. Compl. ¶ 12. As the subscriber, Mr. Stewart's father would have been in a position to know how secure his network was and who might have had access to it and how they were using it. Moreover, the summons was left at Mr. Stewart's residence with his father who gave him the documents. ECF No. 22; ECF No. 24-1, ¶ 5. Under such circumstances, Mr. Stewart had ample opportunity to respond to or deny the allegations against him. See Dallas Buyers Club v. Bui, 2016 WL 1242089, at *3-4 (granting default judgment and injunction against infringer named by subscriber, where his relative accepted service and he did not respond to the action).

The Court thus finds that Plaintiff is entitled to a permanent injunction against Mr. Stewart. The Court GRANTS Plaintiff's request for an injunction prohibiting Mr. Stewart from directly or contributorily infringing Plaintiff's copyrighted Work and from knowingly and willfully using BitTorrent or the Internet to do so. However, the Court DENIES

Plaintiff's request for a broader injunction requiring Mr.
Stewart to cease using BitTorrent or the Internet to copy or
download other content, as Plaintiff does not hold the
copyrights for those works.  See ME2 Prods., Inc. v. Pumaras,
Civ. No. 17-00078 SOM/RLP, 2017 WL 4181344, at 8 (D. Haw. Sept.
21, 2017).

In addition, under 17 U.S.C. § 503(b), the court is
empowered to order the destruction of illegal copies and the
means by which such copies may be reproduced as part of a final
judgment or decree.  This relief "is equitable in nature, and
the standard mirrors that for the grant of a permanent
injunction."  Star Fabrics, Inv. V. 3Free NYC, Inc., CV-12-
10420-MWF, 2013 WL 12124095, at *5 (C.D. Cal. Decl. 9, 2013).
Thus, for the same reasons as stated above, the Court also
GRANTS Plaintiff's request that Mr. Stewart be ORDERED to
destroy all copies of the copyrighted Work, including BitTorrent
files, and to delete the software used to make, exchange, or
distribute copies of the Work.

## II. Plaintiff Correctly Asserts That It is Entitled to Attorneys' Fees, As Reduced By This Court

The Copyright Act provides that a court may award
costs and a reasonable attorneys' fee to the prevailing party.
17 U.S.C. § 505.  This statute "confers broad discretion on
district courts" but "in deciding whether to fee-shift, they

must take into account a range of considerations beyond the reasonableness of litigating positions." Kirtsaeng v. John Wiley & Sons, Inc., 136 S. Ct. 1979, 1988 (2016). These non-exclusive considerations include "the degree of success obtained; frivolousness; motivation; objective unreasonableness (both in the factual and legal arguments in the case); and the need in particular circumstances to advance considerations of compensation and deterrence." Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc., 259 F.3d 1186, 1197 (9th Cir. 2001); see also Kirtsaeng, 136 S. Ct. at 1985. The Ninth Circuit has held that "[t]he most important factor in determining whether to award fees under the Copyright Act, is whether an award will further the purposes of the Act." Mattel, Inc. v. MGA Entm't, Inc., 705 F.3d 1108, 1111 (9th Cir. 2013).

First, Plaintiff's claims against Mr. Stewart are not frivolous, and the factual and legal arguments asserted appear objectively reasonable. Second, by obtaining default judgment against Mr. Stewart, Plaintiff has succeeded to a certain degree. However, Plaintiff has not objected to Judge Puglisi's award of $750, the statutory minimum, despite seeking $7,500. Nevertheless, while the Ninth Circuit has indicated in other contexts that attorneys' fees may be denied where success can be characterized as "purely technical or de minimis," it clarified that de minimis judgments are "those that confer no rights on

the party – those that do not affect the obligations of the defendants toward the plaintiff." <u>Park v. Anaheim Union High Sch. Dist.</u>, 464 F.3d 1025, 1036 (9th Cir. 2006). Especially as Plaintiff has succeeded in obtaining injunctive relief here, its success cannot be considered de minimis. And while the statutory award is just under half of the $1,640.61 in attorneys' fees sought, the disparity suggests to this Court that the amount of fees sought deserves closer scrutiny rather than that Plaintiff is not entitled to any fees at all.

In addition, the Court is not persuaded that it is appropriate to compare Plaintiff's success in this action against how widespread the overall infringement appears to be.[1] Unless Plaintiff were to succeed against a large number of infringers in one fell swoop, its success in any given case will naturally appear relatively small compared to the infringement as a whole. That Plaintiff has allegedly been injured by widespread infringement should not weigh against the recoupment of reasonable, non-duplicative attorneys' fees incurred in this particular action. And though a copyright holder who acquires experience litigating similar claims may, due to the time and

---

[1] The Court notes that <u>Glacier Films (USA), Inc. v. Turchin</u>, No. 3:15-CV-01817-SB, 2016 <u>WL</u> 4251581 (D. Or. Aug. 10, 2016), the case on which Judge Puglisi relied for this comparison, <u>see</u> F&R at 15, is currently on appeal before the Ninth Circuit on this issue, No. 16-35688.

level of skill required, only be entitled to a smaller amount of
attorneys' fees, the Court does not find that the extent of
infringement overall should diminish Plaintiff's success against
any individual infringer.

Next, Plaintiff's apparent motivation in suing Mr.
Stewart was to protect its copyright interests. Though one
magistrate judge has consistently expressed concern that
plaintiffs pursuing BitTorrent cases under the Copyright Act
have been overly aggressive in obtaining settlements through
threat of substantial statutory damages and attorneys' fees,
see, e.g., Cobbler Nevada, LLC v. Anonymous Users of Popcorn
Time: Does 1-11, Case No. 3:15-cv-01550-SB, 2016 WL 4238639, at
*4 (D. Or. Aug. 10, 2016), the Court is not aware of the need
for such concern here. In this case, Plaintiff only sued 15
defendants, of which some have already been dismissed without
prejudice and some with prejudice. The Court is unaware if any
settlements have been reached with the dismissed defendants, and
if so, in what amount. And while Plaintiff has a few similar
cases pending in this district, the Court has no evidence that
Plaintiff has been unfairly obtaining settlements in those cases
either. Under the circumstances, the Court does not find that
this factor weighs against awarding fees.

Finally, the Court considers the need for compensation
and deterrence and whether an award would further the primary

13

objective of the Copyright Act "to encourage the production of original literary, artistic, and musical expression for the good of the public." <u>Fogerty v. Fantasy, Inc.</u>, 510 U.S. 517, 524 (1994). With respect to deterrence, the Court has already found that Mr. Stewart will be subject to a $750 statutory award. Mr. Stewart only appears to have infringed or contributed to infringement of Plaintiff's Work one time. <u>See</u> First Am. Compl. ¶ 10; Ex. 2 (IP activity only shows one occurrence of BitTorrent activity for Plaintiff's Work). A $750 award appears to constitute sufficient deterrence for what appears to only be a single act of infringement.

Although Plaintiff claims its losses due to infringement overall are "substantial," Motion at 17, the Court also notes that Plaintiff has not objected to the statutory award here. Plaintiff thus appears to accept that it has been compensated sufficiently for its damages. Rewarding plaintiffs who have already been compensated for bringing claims does not further the purposes of the Copyright Act. However, without enforcement of copyrights, production of creative works would be chilled, and the Court recognizes that Plaintiff did, as it must, incur some fees in pursuing its successful copyright claim against Mr. Stewart here.

The Court thus finds that Plaintiff is entitled to an award of attorneys' fees. Mindful of the concerns discussed

above regarding the reasonableness of the fee, the Court turns

to Plaintiff's requested award of $1,640.61.  Motion at 26-27.

"When calculating the amount of attorney fees to be

awarded in litigation, the district court applies the lodestar

method, multiplying the number of hours expended by a reasonable

hourly rate."  Ryan v. Editions Ltd. W., Inc., 786 F.3d 754, 763

(9th Cir. 2015) (citing Hensley v. Eckerhart, 461 U.S. 424, 433

(1983)).  The reasonableness of the requested fee is then

determined with reference to the twelve Kerr factors:

> (1) the time and labor required, (2) the novelty and
> difficulty of the questions involved, (3) the skill
> requisite to perform the legal service properly, (4)
> the preclusion of other employment by the attorney due
> to acceptance of the case, (5) the customary fee, (6)
> whether the fee is fixed or contingent, (7) time
> limitations imposed by the client or the
> circumstances, (8) the amount involved and the results
> obtained, (9) the experience, reputation, and ability
> of the attorneys, (10) the 'undesirability' of the
> case, (11) the nature and length of the professional
> relationship with the client, and (12) awards in
> similar cases.

Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir.

1975).  The district court may reduce the amount of requested

fees to reflect a party's limited degree of success, to account

for block billing, or to deduct hours deemed excessive as long

as it provides an adequate explanation for its fee calculation.

Ryan, 786 F.3d at 763.

"The prevailing market rate in the community is

indicative of a reasonable hourly rate."  Jordan v. Multnomah

15

Cty., 815 F.2d 1258, 1262-63 (9th Cir. 1987).  The requesting

party has the burden to produce evidence, in addition to

affidavits of counsel, "that the requested rates are in line

with those prevailing in the community for similar services of

lawyers of reasonably comparable skill and reputation."  Id. at

1263.  Here, Plaintiff's counsel asserts his hourly rate of $350

is below the average hourly rate of $379 for solo practitioners

with an IP technical specialization in the electrical field.

Declaration of Kerry S. Culpepper ¶ 6, ECF No. 26-2 ("Culpepper

Decl.") (citing Ex. 8, Am. Intellectual Prop. Law Ass'n, Report

of the Economic Survey (2015)).  At the same time, Plaintiff

appears to leave the fee rate determination to the Court, noting

that "this Court is better aware of the prevailing rates in the

community, having had the opportunity to review fee requests of

many attorneys."  Motion at 27.

 The Court does not find that Plaintiff's counsel has

sufficiently supported the fee rate requested.  The $379 average

rate appears to be a nationwide rate and does not evidence what

the average rate is in Hawaii, much less what the rate in Hawaii

would be for an attorney of comparable skill and reputation as

Mr. Culpepper.  The Court therefore caps Mr. Culpepper's hourly

rate at $250 (including taxes), which is closer to what has been

awarded to attorneys practicing in Hawaii with similar

experience and what Mr. Culpepper was recently awarded in a

similar case.  See ME2 Prods., 2017 WL 4181344, at *7 (capping

Mr. Culpepper's hourly rate at $250 including taxes).

The entries for which Plaintiff's counsel has

requested fees are for preparing and filing the First Amended

Complaint, preparing and filing the proposed summons, submitting

executed summons for Mr. Stewart, preparing and filing the

Request for Entry of Default, and preparing the Motion for

Default Judgment.  Culpepper Decl. ¶ 4.

First, the Court notes that Plaintiff's counsel has

requested fees for administrative or clerical tasks, which are

not recoverable because they "are part of an attorney's overhead

and are reflected in the charged hourly rate."  See Au v.

Funding Grp., 933 F. Supp. 2d 1264, 1275-76 (D. Haw. 2013); see

also L.R. 54.3(d) (party seeking fees must include authority

entitling it to the requested award).  Tasks such as filing

documents with the Court and preparing documents for filing have

previously been deemed non-compensable clerical tasks.  Id. at

1276.  Preparing and serving the summons has also been found to

be a non-compensable clerical task.  Neil v. Comm'r of Social

Sec., 495 F. App'x 845, 847 (9th Cir. 2012) (finding district

court did not abuse its discretion in declining to award fees

for filing documents and preparing and serving the summons).

Accordingly, the entries for preparing and filing the proposed

summons and filing the executed summons are not compensable.

The Court thus declines to award fees for those two entries, which total 0.5 hours together.

In addition, the entries related to the First Amended Complaint and Request for Entry of Default seek, in part, fees for filing, which are non-compensable. See Culpepper Decl. ¶ 4. These entries are block billed because they fail to specify a breakdown of the time spent on each task. See Robinson v. Plourde, 717 F. Supp. 2d 1092, 1100 (D. Haw. 2010). District courts have authority to reduce hours billed in block format because it is difficult to ascertain how much time counsel spent on specified tasks. Id. However, limited instances of block billing do not prevent the Court from determining the reasonableness of the request as a whole. See Ko Olina Dev., LLC v. Centex Homes, CV No. 09-00272 DAE-LEK, 2011 WL 1235548, at *11 (D. Haw. Mar. 29, 2011); see also L.R. 54.3(d)(2) (services must be described adequately so the reasonableness of requested fees can be evaluated). The Court finds that these two block-billed entries do not prevent the Court from assessing the reasonableness of counsel's request overall.

With respect to the claim for 1 hour spent preparing and filing the First Amended Complaint, the Court notes that the amended complaint is substantially similar to the original complaint. While Plaintiff's counsel did make some additions and edits regarding Mr. Stewart, including adding an exhibit to

18

the complaint, these edits do not require much legal skill or
attention.  Similarly, for the 1 hour spent preparing and filing
the request for entry of default, the Court finds that this is a
short, form document which Mr. Culpepper appears to have filed
numerous times in other cases.  See, e.g., ME2 Prods., 17-cv-
00078 SOM-RLP, 2017 WL 4181344, at *7 & ECF No. 30.  While
Plaintiff's counsel did have to add information relevant to Mr.
Stewart, preparing this document does not require much legal
skill or effort.

       Finally, Plaintiff's counsel states that he spent 2
hours preparing the motion for default judgment.  The Court
notes that this motion is nearly identical to the motion for
default judgment that Mr. Culpepper had previously filed in Cook
Productions, LLC v. Does 1-8, Civ. No. 16-00637 HG-KSC, ECF No.
48 (June 8, 2017).  The Motion is also essentially the same as
the one filed in ME2 Productions, 17-cv-00078 SOM-RLP, ECF No.
32 (July 12, 2017).  The Court recognizes that Mr. Culpepper
appears to have requested more fees in connection with preparing
the motion in the earlier Does 1-8 matter, Civ. No. 16-00637.
See Declaration of Counsel ¶ 4, ECF No. 48-2.  Mr. Culpepper
thus presumably has been compensated for the bulk of the legal
work in preparing this motion, and the 2 hours claimed here
relate to making small changes only relevant to Mr. Stewart,
such as the dates of service and the BitTorrent activity related

19

to the IP address he used.  See Motion at 7-8.  However, as with
the other two entries, these changes do not appear to require
much legal skill or effort.

The Court recognizes that numerous other courts
confronted with BitTorrent cases have reduced attorneys' fees
because "these cases amounted to something akin to 'form-
pleading' necessitating little, if any legal skill or
attention."  Dallas Buyers Club, LLC v. Madsen, No. C14-1153RAJ,
2015 WL 6680260, at *6 (W.D. Wash. Nov. 2, 2015) (collecting
cases).  However, in those cases, counsel appears to have
requested higher fees than what was requested here.  See, e.g.,
id. (awarding $2,099.80 in fees on a request for $3,916.77).
Here, Plaintiff's counsel only requested $1,640.61 for 4.5 hours
of work at $350 per hour plus tax.

Taking into account the reduction in the fee rate to
$250 (including taxes) and the reduction in compensable hours
from 4.5 to 4, as discussed above, the Court finds that
Plaintiff's fee request is lowered to $1,000.  The Court does
not find this to be an unreasonable fee under the circumstances.
The Court therefore GRANTS Plaintiff's request for attorneys'
fees in the amount of $1,000.

## CONCLUSION

For the foregoing reasons, the Court ADOPTS IN PART
AND REJECTS IN PART the Findings and Recommendation to Grant in

Part and Deny in Part Plaintiff Cook Productions, LLC's Motion for Entry of Default Judgment Against Defendant Alex Stewart, as follows:

(1)  Default judgment shall be entered in Plaintiff's favor and against Defendant Alex Stewart;

(2)  Plaintiff's request for an injunction prohibiting Mr. Stewart from directly or contributorily infringing Plaintiff's copyrighted Work and refraining from knowingly and willfully using BitTorrent or the Internet to infringe the Work is GRANTED;

(3)  Plaintiff's request for an injunction prohibiting Mr. Stewart from knowingly and willfully using BitTorrent or the Internet to copy or download in violation of U.S. copyright law other content to which Plaintiff does not hold a copyright is DENIED;

(4)  Plaintiff's request for an order requiring Mr. Stewart to destroy all copies of the copyrighted Work and to delete all software used to make, exchange, or distribute copies of Plaintiff's copyrighted material is GRANTED;

(5)  Plaintiff is GRANTED an award of $750 in statutory damages; and

(6)  Plaintiff is GRANTED attorneys' fees in the amount of $1,000.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, October 24, 2017.



_____
Alan C. Kay
Sr. United States District Judge


<u>Cook Productions, LLC, v. Alex Stewart, et al.</u>, Civ. No. 17-00034 ACK-RLP, Order Adopting in Part and Rejecting in Part the Findings and Recommendation to Grant in Part and Deny in Part Plaintiff Cook Productions, LLC's Motion for Entry of Default Judgment Against Defendant Alex Stewart.